# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT HANKINS, | )<br>)<br>) |
| Plaintiff, | )<br>) 1:12-cv-00168 |
| v. | )<br>)<br>) |
| C/O WOLF, | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM ORDER

In advance of trial, this Court conducted a telephonic status conference on July 13, 2016 with Pro Se Plaintiff Robert Hankins, defense counsel, and a representative of the U.S. Marshals Service ("USMS") to discuss the security measures, if any, that will be used at the upcoming jury trial and the efforts that will be taken to minimize the potential prejudice to Plaintiff in light of those measures.[1] This Memorandum Order reflects the Court's ruling(s) on those matters.[2]

A decision regarding the types of security measures that will be used at trial ultimately rests with the Court, not the Marshals. *See Sides v. Cherry*, 609 F.3d 576, 582 (3d Cir. 2010). In exercising its discretion, the Court has to "balance the prejudice to the prisoner-plaintiff against the need to maintain safety or security." *Id.* at 581 (citations omitted). To that end, the Court "may rely on a variety of sources, including (but not limited to) records bearing on the inmate's

---

1. Prior to ordering physical restraints on a prisoner-plaintiff in a civil jury trial, a district court should, at the least, "hold a proceeding outside the presence of the jury to address the issue with counsel." *Sides v. Cherry*, 609 F.3d 576, 582 (3d Cir. 2010). But where "there are genuine and material factual disputes regarding the threat to courtroom security posed by a prisoner-plaintiff, an evidentiary hearing is called for." *Id.* In this case, the Court finds that a full-blown evidentiary hearing is not necessary. Defense counsel has placed on the record sufficient facts regarding Mr. Hankins' background, which he does not contest, that allows the Court to exercise its discretion.

2. During the telephone conference, Mr. Hankins made an oral motion regarding spoliation of evidence, namely a cell extraction video. Defense counsel opposed the motion, arguing that Mr. Hankins was raising this issue for the first time in this four-year-long litigation. The Court deferred ruling on Mr. Hankins' motion, but it has since reconsidered same. Accordingly, Mr. Hankins' oral motion is **DENIED**, for substantially the same reasons advanced by defense counsel during the telephonic conference.

'proclivity toward disruptive and/or violent conduct' (such as the inmate's criminal history and prison disciplinary record), and the opinions of 'correctional and/or law enforcement officers and the federal marshals.'" *Id.* (quoting *Woods v. Thieret*, 5 F.3d 244, 246 (7th Cir. 1993)). "[T]hough a district court may rely 'heavily' on advice from court security officers, it 'bears the ultimate responsibility' of determining what restraints are necessary." *Id.* (quoting *Woods v. Thieret*, 5 F.3d 244, 248 (7th Cir. 1993)). If the Court decides that "restraints are necessary, it should 'impose no greater restraints than are necessary, and [ ] must take steps to minimize the prejudice resulting from the presence of the restraints.'" *Id.* (quoting *Davidson v. Riley*, 44 F.3d 1118, 1123 (2d Cir. 1995)). "[T]aking steps to reduce the visibility of restraints and the giving of limiting or curative instructions dealing with the shackles are appropriate methods of eliminating potential prejudice." *Woods*, 5 F.3d at 249.

The facts placed on the record during the telephonic conference demonstrate the need for security measures to ensure safety in the Courtroom during trial. For instance, defense counsel explained that, in Mr. Hankins' eighteen-yeas in DOC custody, he has amassed over two-hundred (200) misconducts – eighty of which were assaultive in nature while twenty-six were actual assault incidents. Mr. Hankins has also sustained an additional conviction while incarcerated for aggravated assault with bodily injury to an officer. As such, he has been designated as the highest security level, with placement on the restricted release list and in the special management unit, which is the "last resort," so to speak.

With this background in mind, the Court deems physical restraints necessary; Mr. Hankins will remain in leg-irons throughout the trial and wear under his clothes a "rack belt," which is capable of delivering an electronic charge / stun. To minimize the potential prejudice to Mr. Hankins, the Court will order him to be moved into the Courtroom outside the presence of

the jury, sit him furthest from the jury, and ask him to testify from counsel table – both of which will be skirted with a drape. A representative of the USMS has also ensured the Court that the leg irons will be wrapped so that they are not audible to the (potential) jurors. In addition, the Court will direct the DOC officials and/or Deputy U.S. Marshal(s) responsible for escorting and supervising Mr. Hankins to disperse throughout the Courtroom to make them less conspicuous to the (potential) jurors. These measures will substantially minimize, if not eliminate, the likelihood that the jurors will know of the security measures. If it comes to the Court's attention, however, that the shackles or other security measures become visible or otherwise apparent to the jury during the trial, the Court will give a curative instruction.[3]

In light the pending transfer of Mr. Hankins to a facility in or around the Western District of Pennsylvania, defense counsel is directed to transmit a copy of this Memorandum Order to him **FORTHWITH**.

**SO ORDERED**, this 13th day, of July, 2016.

BY THE COURT:
s/Terrence F. McVerry
Senior United States District Judge

---

3. In *Sides v. Cherry*, the Court of Appeals found that the following jury instruction, given by then-Chief Judge Gary L. Lancaster at the beginning of trial, cured any prejudice to the plaintiff:

> The Constitution does not stop at the prison walls. All prisoners, including Mr. Sides, are afforded the same protections under the United States Constitution as you and I.
>
> However, according to standard policy of the Department of Corrections, Mr. Sides will be secured while in the courtroom and accompanied by uniformed officers here in the courtroom. Again, this is a . . . standard procedure[ ] for all inmates, and is not innate to Mr. Sides. Such procedures are always employed when any inmate comes into the courtroom. While these circumstances are hard to ignore, you must keep in mind that this is not something special, no special thing we are doing for Mr. Sides. It is simply the standard procedure.
>
> Also, during the course of the trial, other inmates may testify. These inmates will also be secured and accompanied by uniformed officers. Again, you are not to allow these standard security measures to distract you from your job. That is to decide the case based . . . solely on the evidence.

609 F.3d 576, 585 (3d Cir. 2010) (alterations in original). The Court will give a modified version of this instruction, if necessary.

cc: **ROBERT HANKINS**
DT-3209
SCI CAMP HILL
P.O. BOX 200
CAMP HILL, PA 17001
PRO SE

**Mary Lynch Friedline, Esquire**
Email: mfriedline@attorneygeneral.gov